ORR, District Judge.
This is a suit for injunction and accounting for infringement of letters patent of the United States, No. 771,774, granted October 4, 1904, to J. M. G. Fullman for apparatus for copying- drawings. It is now before the court upon final hearing-. In the presentation of the case there are but three questions to be considered: (1) Has tlie plaintiff sufficiently proven title to tlie patent? (2) Was there invention? (3) Is there infringement?
Title. The complainant alleged a complete assignment of the patent by the patentee to it, dated January 22, 1907, and recorded in the United States Patent Office February 4, 1907, in Fiber R — 75, page -105. Complainant’s attorney offered a copy of said assignment, giving exact date and place of record as alleged in the bill. By stipulation of the counsel for the parties the copy, “subject to correction by the original,” could be used with the same force and effect as if the original had been filed of record. No complaint is made by the defendants that the copy filed is not correct. Without more, no argument could be based upon failure to prove title. But during the examination of Fullman, tlie patentee, it appeared that he had, prior to said assignment, •granted a license to Eugene Dietzgen Company, which was originally exclusive, but which by subsequent agreement became a limited license *316 or shoo right, for which the said licensee was paying royalties to the complainant at the present time. The evident purpose of complainant in proving the receipt of royalties was to show the value of the invention. The production of the original agreements with said licensee was demanded by the defendants as the best evidence, and because they were not produced defendants insist that the bill must be dismissed. They might have proven an agreement to pay, but they would not have proven the receipt of royalties. They were simply collateral to the issue. Their contents, or terms, were not (so far as appears) relative to the issue, and were not attempted to be proven. In another branch of the law it is well known evidence as to the fact of tenancy may be received as a matter collateral to the issue without the production of the lease, although in writing. Complainant’s title to the patent in suit was fully established.
Invention. Defendants are now heard to deny what they recently affirmed. The record of the Court of -Appeals for the District of Columbia, at No. 244 in Patent Appeal Docket, shows an interference was instituted between an application by Herman, one of the defendants herein, and the application of said Pullman “for -a similar invention” (quoting Herman’s language), which was so proceeded with that priority of invention was awarded to Pullman. Thereupon the patent in suit was issued to him. In that proceeding the defendant Elliott, who was manager-of the defendant company, appeared as a witness for Herman, and testified that the defendant company was sole selling agent for the Herman blue-print machines, and that within two years prior to the time of his examination that company had sold 11 of the machines. So far as appears, the defendants still bear the same relation to each other, and it is clear that they are still manufacturing and selling the machines described in the Herman application. It has been held that the action of the officials of the Patent Office, with the state of the prior art before them, in granting a patent, creates a presumption of patentable novelty, which must be overcome by clear proof that they were mistaken. Fairbanks, Morse & Co. v. Stickney, 123 Fed. at page 79, 59 C. C. A. 209. That presumption, if affected by the prior conduct of the defendants in this case, must be much strengthened. They should, perhaps, be held to some standard, if possible, of extraordinary proof. However, if there had been no interference by Herman, the evidence offered in the, case at bar is not sufficient to show there was no invention by Fullman.
There are other elements tending to show invention which appear from the acts of the parties and the public: (a) The defendants are still manufacturing and selling the machines described in Herman’s application; (b) the Dietzgen Company is still paying royalties to the complainant; (c) the Buckeye Engine Company negotiated with Pullman for a license; and (d) the complainant was an infringer of Pullman’s patent, and paid $4,000 to Pullman for the same to avoid litigation for infringement. As stated in Fullman’s specification, his invention “relates to improvements in apparatus for reproducing or copying drawings, and particularly to that class of such devices in which the reproduction is obtained by electrically-produced light.” *317 The first six claims of the Pullman patent, which complainant alleges to be infringed, are:
“1. In mi apparatus for copying or reproducing drawings, etc., the combination of a cylinder, means to support the subject-matter to be copied or reproduced upon the exterior of said cylinder, an arc-lamp adapted to be lowered into the interior of said cylinder, and means to automatically break the circuit for the purpose of extinguishing the light.
"2. A printing frame and a lamp, movable one in relation to the other, in combination with an automatic device to cut off the light upon the completion of the printing process.
“3. In an apparatus for copying drawings, etc., the cylindrical printing frame, the suspended electric arc-lamp and means for controlling its descent within the frame, an electric switch controlling the light circuit, and means for automatically opening the switch when the lamp has. completed its travel.
“4. In an apparatus for copying drawings, etc., the cylindrical support for the drawings, a suspended lamp arranged to descend axially within the frame, a governing apparatus for controlling the descent of the lam]), and the automatically operated switch controlling the light-circuit.
“«I. In an apparatus for copying or reproducing drawings, etc., the combination of a cylinder adapted to be rotated, means to support the subject-matter to be copied or reproduced upon the exterior of said cylinder, an arc-lamp adapted to be lowered into said cylinder, and means to automatically break the circuit for the purpose of extinguishing the light.
"(!. In an apparatus for copying drawings, etc., the cylindrical support for the drawings, a suspended lamp arranged to descend axially within the frame, the counterweight, the time mechanism controlling the descent of the lamp, and the automatically-actuated switch controlling the circuit on both sides of the lam]>.”
The blue-printing machines in use prior to the Pullman invention did not have any means for automatically extinguishing the light when the printing process was completed. Twenty-five machines had beeti made and sold by the Pittsburgh Blue-Print Company, with which Pullman was connected, without tlie automatic cut-olf, and other companies had placed machines on the market without it.
Defendants contend that the Pullman patent was anticipated by the Hall British patent, No. 9,853 of 1897, by the United States patent to Urie, No. 478,663, of July 12, 1892, by the United States patent to Schwartz, No. 612,550, of 1898, and by the Suter British patent, No. 30,087 of 1897. Their contentious are not sustained. The Hall patent is the only one having any real hearing on the questions at issue. The record of the interference proceedings shows it was before the examiners. That patent shows and describes a cylindrical printing frame ararranged so it can be rotated on iis own axis and an arc light adapted to be lowered gradually within the cylindrical printing frame by means of time or clockwork maclianism to control its motion. To that extent the Hall machine has parts similar in construction and operation to the Pullman machine. But nothing is said in the Hall specification about turning on or off the current to the lamp. The Urie, Schwartz, and Suter patents each relate to photographic printing from negatives. In each there is a means of extinguishing the light when a sufficient exposure has been given to the sensitized paper within the printing frame. That is done by some motive power external to the machine itself, and is not dependent in its action upon the relative movement of the source of light in relation to the printing frame, as is the case in the Pullman machine. The claims of Pullman were not anticipated.
*318 Infringement. It was not seriously argued, either at bar or in the briefs of counsel, that the Herman machines, as described in the Herman patent, No. 777,096, and as manufactured by the defendants, were unlike the Fullman machines. As a fact they are, notwithstanding some slight variations, the same machines.
Therefore the complainant, having shown title, invention, and infringement, is entitled to an injunction and an accounting as prayed for. Eet a decree be drawn in accordance with this opinion.

For other coses nee same topic & § number in Dec. & Am. Digs. 1907 to date, & Itep’r Indexes